## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ELIJAH HAWTHORNE**                          **CIVIL ACTION**

**VERSUS**                                    **NO. 13-0036**

**BURL CAIN, WARDEN**                         **SECTION "N"(4)**
**LOUISIANA STATE PRISON**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual and Procedural Background

The petitioner, Elijah Hawthorne ("Hawthorne") is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]   On April 3, 2006, Hawthorne was

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

indicted by a Grand Jury in Tangipahoa Parish for the first degree murder of Samuel Galaforo, Sr.[3] Hawthorne initially entered a plea of not guilty to the charge on April 13, 2006.[4]

The record reflects that, on December 16, 2005, Galaforo was found dead in the kitchen of his home.[5]  He had sustained approximately eight stab wounds, at least three of which penetrated his heart causing his death.  He was 85 years old at the time of his murder.

While investigating Galaforo's murder, deputies from the Tangipahoa Parish Sheriff's Office interviewed Hawthorne about his relationship with Galaforo and his whereabouts at the time of the murder.  Hawthorne told the deputies that he had been at Galaforo's house the day before his death.  Detective Gary Baham suggested that Hawthorne submit to a psychological-stress evaluator, a form of lie detection.  Hawthorne initially agreed, but then indicated that he did not want to submit to the test without speaking to his wife, Rosa Lee Hawthorne.  Mrs. Hawthorne suggested that he take the test, but Hawthorne refused to submit.  The deputies allowed Hawthorne to return home.  They continued to investigate and ultimately identified Hawthorne to be their prime suspect.

Prior to this, Hawthorne was arrested for a misdemeanor charge of unauthorized use of a movable.  He was released on bond at the time of the murder.  Detective Stuart Murphy spoke with the bond surety, Mike Launey, to advise him that Hawthorne was a suspect in the murder investigation.  Launey decided that Hawthorne had become a flight risk.  He notified Detective Murphy that he would withdraw as the surety on the bond.  Hawthorne was taken back into custody

---

[3]St. Rec. Vol. 1 of 4, Indictment, 4/3/06.  The indictment spells the victim's name "Galafaro," although the state court's use the spelling "Galaforo."

[4]St. Rec. Vol. 1 of 4, Minute Entry, 4/13/06.

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Hawthorne*, 25 So.3d 248 (La. App. 1st Cir. 2009) (Table); *State v. Hawthorne*, No. 2009-KA-1367, 2009 WL 4981335, at *1-*2 (La. App. 1st Cir. Dec. 23, 2009); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2009-KA-1367, pp. 3-4, 12/23/09.

on the misdemeanor charge.  Launey at some point completed a "Bondsman Off Bond Form," indicating that he would no longer act as the surety.

At some point, Detective Baham asked Mrs. Hawthorne for consent to search their home. She agreed and signed a form indicating her voluntary consent.  During the search, the deputies found shoestrings soaking in bleach and tennis shoes without strings in them.  They seized Hawthorne's bicycle which had what appeared to be blood on the handlebar.  The items believed to be related to the murder were sent to the forensic laboratory for analysis.

The deputies also found in the home drug paraphernalia and evidence that Hawthorne had stolen a television.  Hawthorne, who was already in jail on the misdemeanor charge, was placed under arrest for possession of drug paraphernalia and for felony theft.

Hawthorne remained in jail and shared a cell with an inmate identified as Marvin Patrick. Although Patrick had cooperated with law enforcement in the past, he was not intentionally placed in the cell with Hawthorne or directed by police to obtain information.  While they were together, Hawthorne made incriminating statements to Patrick regarding the murder.  Patrick advised Detective Baham that Hawthorne said Galaforo had been stabbed six or eight times, which was a fact not revealed to the public, and that he had soaked his shoestrings in bleach to dissolve the blood on them.  The information gathered from Patrick led to Hawthorne's arrest for Galaforo's murder.

Hawthorne and his counsel filed several motions to suppress the evidence seized from his home and the statements he made to Patrick, which were eventually denied by the state trial court.[6] His counsel twice sought review of the ruling in the Louisiana First Circuit Court of Appeal.[7]  On

---

[6]St. Rec. Vol. 1 of 4, Hearing Transcript, 4/29/08; Minute Entry, 4/29/08.

[7]St. Rec. Vol. 3 of 4, 1st Cir. Writ Application, 2008-KW-1330, 7/1/08; 1st Cir. Writ Application, 2008-KW-1896, 9/15/08.

August 1, 2008, the Court declined to consider the first application because counsel failed to include required documentation.[8]  On November 10, 2008, the Court declined to consider counsel's corrected application, because the first application was not timely filed to preserve the review.[9]

Over five months later, on April 22, 2009, Hawthorne withdrew his former plea of not guilty and entered a plea of nolo contendere or no contest to the first degree murder charge under the provisions of *State v. Crosby*, 338 So.2d 584 (La. 1976), which would reserve his right to appeal the denial of the motion to suppress, and the State in turn would not pursue the death penalty.[10]  After waiver of legal delays, the Court sentenced Hawthorne to serve life in prison at hard labor, without benefit of parole, probation, or suspension of sentence.[11]

On direct appeal, Hawthorne's appointed counsel raised three assignments of error:[12] (1) The deputies unlawfully took Hawthorne to jail after the surety withdrew without court intervention. (2) The deputies did not have lawful consent to search his home. (3) The statements made to Patrick in the jail were inadmissible because Hawthorne had asked for counsel and Patrick was planted in the cell as an informant.  The Louisiana First Circuit affirmed Hawthorne's conviction and sentence on December 23, 2009, finding no merit in the issues raised.[13]

---

[8]St. Rec. Vol. 3 of 4, 1st Cir. Order, 2008-KW-1330, 8/1/08.

[9]St. Rec. Vol. 3 of 4, 1st Cir. Order, 2008-KW-1896, 11/10/08.

[10]St. Rec. Vol. 1 of 4, Plea Transcript, 4/22/09; Plea Minutes, 4/22/09.

[11]St. Rec. Vol. 1 of 4, Plea Transcript, 4/22/09; Plea Minutes, 4/22/09.

[12]St. Rec. Vol. 3 of 4, Appeal Brief, 2009-KA-1367, 8/24/09.

[13]*State v. Hawthorne*, 25 So.3d at 248; *State v. Hawthorne*, 2009 WL 4981335, at *1, *6; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2009-KA-1367, pp. 1, 10, 12/23/09.

The Louisiana Supreme Court denied Hawthorne's subsequent writ application without stated reasons on September 3, 2010.[14]  His conviction and sentence became final ninety (90) days later, on December 2, 2010, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On July 15, 2011, Hawthorne submitted an application for post-conviction relief to the Trial Court raising two grounds for relief:[15] (1) the plea was not voluntarily made and was based on poor advice of counsel and without resolution of his mental capacity; and (2) counsel provided ineffective assistance when (a) he advised Hawthorne to enter a guilty plea without a ruling on the motion to appoint a sanity commission and before Hawthorne was identified as the perpetrator, and (b) he did not provide Hawthorne with, or assure that he received, a full explanation of the rights being waived. The Trial Court denied the application without stated reasons on July 20, 2011.[16]

Hawthorne apparently sought review of this order in the Louisiana First Circuit and his application was denied on the showing made for his failure to include the appropriate supporting documentation.[17]  He submitted a more thorough application with the appellate court on October 31,

---

[14]*State v. Hawthorne*, 44 So.3d 698 (La. 2010); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2010-K-0162, 9/3/10; La. S. Ct. Letter, 2010-K-162, 1/22/10 (postmark 1/21/10).  The State failed to provide a certified copy of this writ application or any other Louisiana Supreme Court file.

[15]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 7/19/11 (dated 7/15/11).

[16]St. Rec. Vol. 2 of 4, Trial Court Order, 7/20/11.

[17]St. Rec. Vol. 3 of 4, 1st Cir. Order, 10/11/11.  The State failed to provide a certified copy of this writ application.

2011, and the Court denied it without stated reasons on February 29, 2012.[18]  The Louisiana Supreme Court denied Hawthorne's related writ application without stated reasons on September 12, 2012.[19]

## II.   <u>Federal Petition</u>

On January 10, 2013, the clerk of this Court filed Hawthorne's federal petition for habeas corpus relief in which he raised four grounds for relief:[20] (1) the police unlawfully had his bond revoked without court intervention; (2) the police engaged in a warrantless search in violation of the Fourth Amendment; (3) the police unlawfully utilized an inmate informant for the sole purpose of soliciting incriminating evidence after Hawthorne requested counsel; (4) the guilty plea was not freely and voluntarily made; and (5) trial counsel provided ineffective assistance.

The State filed a response in opposition to the petition recognizing only four of the five claims raised by Hawthorne.[21]  The State argued that two of the four claims were not exhausted, and otherwise only raised questions of state law.  In addition, the State argued that the denial of relief on the two exhausted claims was not contrary to or an unreasonable application of federal law.

Hawthorne filed a reply to the State's opposition re-urging the merits of the four claims addressed and arguing that any failure to present his claims to the state courts should be excused.

---

[18]St. Rec. Vol. 4 of 4, Copy of 1st Cir. Writ Application, 2011-KW-2108, dated 10/31/11; 1st Cir. Order, 2011-KW-2108, 2/29/12.

[19]*State ex rel. Hawthorne v. State*, 98 So.3d 305 (La. 2012); Copy of La. S.Ct. Writ Application, 12-KH-0713, dated 3/19/12; La. S.Ct. Letter, 2012-KP-812, 4/12/12 (showing postmark 4/11/12).  The State failed to provide a certified copy of this writ application or any other Louisiana Supreme Court file.

[20]Rec. Doc. No. 1, pp. 12, 33, 35, 37, 47

[21]Rec. Doc. No. 10.

### III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court no later than January 7, 2013.[23]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record reflects that Hawthorne's petition was timely filed and none of his claims are in procedural default.  The State has urged that Hawthorne failed to exhaust his claims related to the voluntariness of his plea and ineffective assistance of counsel.  The State is in clear error as even a cursory reading of Hawthorne's 2011 Louisiana Supreme Court writ application reflects that he raised each of those claims and supporting argument to the Louisiana Supreme Court just as he had done in the state trial and appellate courts.[24]  The State's exhaustion defense is rejected.

---

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Hawthorne's federal habeas petition on January 10, 2013, when pauper status was granted.  Hawthorne presented the pleadings to the prison officials on January 7, 2013, for forwarding to the Court by e-mail.  *See* Rec. Doc. No. 2 (prison receipt stamp).  This is considered to be the filing date of his petition under the mailbox rule.

[24]The Court notes that the State failed to provide certified copies of the Louisiana Supreme Court records.

The Court will address the substance of Hawthorne five claims appearing in his two form petitions and the supporting memorandum.

**IV.**   **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210

F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**V.     Surrender Upon Withdrawal of Bond Surety**

Hawthorne lists as one claim his contention that the police unlawfully caused his bond to be revoked without court intervention. He complains that this resulted in his incarceration which led

9

to his arrest on the murder charge.  Hawthorne did not address this claim in his memorandum in support, although it appears to be the same claim raised by his counsel in the direct appeal.

The Louisiana First Circuit on direct appeal resolved that La. Code Crim. P. art. 345 was unambiguous in its language allowing for the surety to surrender a defendant to the police and withdraw from the bond.  Further, the police were without discretion to refuse a defendant surrendered by the surety.  Therefore, the actions of the police and the surety were in compliance with state law and did not require court action.

As an initial matter, this Court does not sit to review the state courts' interpretation and application of its own laws.  *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).  The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).  The Court will give deference to the state courts' determination that the Tangipahoa Parish Sheriff's Deputies were required to detain Hawthorne when the surety surrendered him and lawfully withdrew from the bond.

Hawthorne has presented no federal basis for this court to consider his claim.  As such, he is not entitled to federal habeas relief on this issue.

## VI.    Search Based on Wife's Consent

Hawthorne alleges that the police had no warrant and did not have valid consent from his wife when they searched his home in violation of the Fourth Amendment.  He contends that,

immediately after he was returned to jail, the deputies contacted his wife to gain access into their home to search for incriminating evidence or to manufacture probable cause for his arrest for the murder.  He claims that the police ignored his objections to the search, so they confronted his wife knowing that she would agree to allow the search.

The State in its response merely block-quotes the state appellate court's opinion and urges without analysis that Hawthorne has not established that the denial of relief on this claim was contrary to federal law.

Nevertheless, this Court does not reach the merits of Hawthorne's claim for habeas corpus relief.  It is well settled that Fourth Amendment violations are generally not cognizable on federal habeas review.  *Stone v. Powell*, 428 U.S. 465, 480-81 (1976).  In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id*. at 494 (footnotes omitted).  A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus

consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192. "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under Stone." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply. *Id*. at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tx. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006)). Likewise, even when the state courts err in the disposition of the Fourth Amendment claim on procedural grounds, the *Stone* bar still applies "with equal force." *Williams*, 609 F.2d at 219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must

apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams*, 609 F.2d at 220; *see also Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.  Hawthorne has not met this burden.

He does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  On the contrary, he recognizes that his Fourth Amendment claims were addressed during the pretrial proceedings in state court and on direct appeal.  He therefore has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude such litigation.  Moreover, this Court has recognized that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting referenced report and recommendation).

As outlined previously, the record demonstrates that Hawthorne had ample opportunity to, and he and his counsel did, raise his Fourth Amendment claims both pretrial and on direct appeal.  Hawthorne's counsel urged this argument in support of the pretrial motion to suppress the evidence seized from the home.  After a full evidentiary hearing on the issue, the Trial Court denied the motion to suppress, finding Mrs. Hawthorne's consent to have been freely given and the warrantless search to have been valid.

Hawthorne's counsel sought review of the issue in the Louisiana First Circuit and the writ applications were not considered.  Nevertheless, because of the *Crosby* plea, Hawthorne was able to raise the issue on direct appeal to the Louisiana First Circuit.

On its review, the Louisiana First Circuit found no evidence that Hawthorne had objected to the search, even though it was not clear to the court whether he was present when the deputies conducted the search or already in jail.[25]  The Court also resolved that Hawthorne was not removed from the home as part of a scheme to gain access for the search, but was instead returned to jail based on the surety surrender.  The Court held that the wife's consent was valid and that the trial court did not err in denying the motion to suppress the evidence seized from the home.  That review was confirmed by the Louisiana Supreme Court's denial of his post-appeal writ application.

The record, therefore, demonstrates that Hawthorne was provided with the opportunity to present his Fourth Amendment claims to the state courts, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted).  The fact that Hawthorne may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone* bar to federal habeas corpus review.  *Janecka*, 301 F.3d at 320-21.  The review on post-conviction at all levels of the state courts was sufficient to meet due process requirements and to prohibit review of his Fourth Amendment claims in this federal court.  He is not entitled to habeas relief on this issue.

---

[25] *See* n. 13, *supra.*

**VII.    Inculpatory Statement to Another Inmate**

Hawthorne alleges that, after he invoked his right to counsel, the Tangipahoa Parish Sheriff's Deputies unlawfully placed inmate Marvin Patrick in the same cell in an effort to elicit inculpatory information on which to base his arrest for the murder.  The State again block-quotes the state appellate court's opinion on the issue, contending that Hawthorne has not established that the denial of relief on this claim was contrary to federal law.

Hawthorne raised this issue in his motion to suppress which was denied by the state trial court after the evidentiary hearing held April 29, 2008.  The Court found that Hawthorne presented no evidence to support his suggestion that Patrick was placed in the cell by the deputies and that his voluntary statements to Patrick were made while he was lawfully detained on the other charges.

On direct appeal, the Louisiana First Circuit revisited the issue, reached the same resolve, and found no error in the Trial Court's denial of the motion to suppress.  The appellate court found no basis for Hawthorne's conjecture that Patrick was acting as an agent of the deputies or that he was purposely placed in the same cell to obtain information.  The Court also noted that, at the time of the statements, Hawthorne had not been arrested for, or charged with the murder.

This claim, brought here under the Fifth and Sixth Amendment, present a mixed question of law and fact.  *See Soffar v. Cockrell*, 300 F.3d 588 (5th Cir. 2002); *United States v. Brown*, 444 F. App'x 811, 812 (5th Cir. 2011); *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. 2002).  The Court must determine whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court law.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. XVI.  Once a

defendant's Sixth Amendment right to counsel has attached and has been invoked, he is denied that right when police "deliberately elicit" incriminating statements from him in the absence of his lawyer. *Massiah v. United States*, 377 U.S. 201, 206 (1964).  Any statement so compelled also can be excluded under the prohibitions against self-incrimination found in the Fifth Amendment. *See Kansas v. Ventris*, 556 U.S. 586, 590-91 (2009).

It is well settled, however, that a defendant does not establish a violation of his rights merely by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986).  Instead, when incriminating information is obtained through an informant, the defendant must show that, on behalf of the police, the informant "deliberately used his position to secure incriminating information from [the defendant] when counsel was not present." *United States v. Henry*, 447 U.S. 264, 270 (1980).  The defendant must prove that the informant took some action, other than just listening, to elicit incriminating statements that were not otherwise spontaneous. *Kuhlmann*, 477 U.S. at 459.  "[T]he Sixth Amendment is not violated whenever – by luck or happenstance – the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985).

Furthermore, in *Moulton*, the Supreme Court noted that, where the defendant makes "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached," those statements "are, of course, admissible at a trial of those offenses." *Id*., 474 U.S. at 180, n.16.  Thus, the Supreme Court has stated that there is no violation of the right to counsel where that right has not yet attached at the time the defendant makes the inculpatory statement. *Id*.; *see also*, *Kuhlman*, 477 U.S. at 458.  In determining whether the right to counsel was

invoked, and whether the informant acted on behalf of the police in eliciting the information, the federal habeas court is required "to accord to the state trial court's factual findings the presumption of correctness expressly required by 28 U.S.C. § 2254(d)." *Kuhlmann*, 477 U.S. at 459-60 (citing *Patton v. Yount*, 467 U.S. 1025 (1984) and *Sumner v. Mata*, 449 U.S. 539 (1981)).

In the instant case, as determined by the state trial and appellate courts, Hawthorne has not pointed to or demonstrated that the police placed Patrick in his cell for the purpose of eliciting the inculpatory statements. Based on the testimony at the suppression hearing, the state courts resolved that Patrick was not placed in the cell on purpose nor was he acting on behalf of the deputies when he obtained Hawthorne's inculpatory statements about the murder. For these reasons, the state courts found no basis to suppress Hawthorne's statements. A review of the record discloses nothing to counter the state courts' findings in this regard. Hawthorne, therefore, has not demonstrated Sixth (or Fifth) Amendment violation.

In addition, as also mentioned by the state appellate court, Hawthorne had not yet been arrested, charged or detained in connection with the murder charge when the statements were made to Patrick. At the time the statements were made, Hawthorne was detained because of the withdrawal of the bond surety and his arrests for the unauthorized use of a movable and possession of drug paraphernalia. The information and details of the murder that Hawthorne conveyed to Patrick referenced a crime, i.e. the murder, different from those for which he was being held. His Sixth Amendment right to counsel as it related to the murder charge had "not yet attached." *See Moulton*, 474 U.S. at 180, n.16; *Kuhlman*, 477 U.S. at 458. Thus, under Supreme Court precedent, there could be no Sixth Amendment violation where Hawthorne made inculpatory statements to

Patrick, acting on his own, and which related to a murder for which Hawthorne was not being held and had not been arrested or charged.

For these reasons, the state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief on this claim.

## VIII.   <u>Voluntary Plea</u>

Hawthorne alleges that his nolo contendere plea was not freely and voluntarily entered.  He argues that the Trial Court failed to resolve the issue of his mental capacity or to rule on the motion to appoint a sanity commission before accepting the plea, in violation of the rule set forth in *Pate v. Robinson*, 383 U.S. 375 (1966).  He also contends that the plea colloquy fails to meet the requirements set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969), to assure that the plea was knowingly and voluntarily made.

Hawthorne raised this issue in his state application for post-conviction relief and the related writ applications, each of which was denied by the respective state court without stated reasons.  The State did not address the merits of the issue in its response.

Under Louisiana law, a plea of nolo contendere, or no contest, has the same legal effect in a criminal proceeding as a plea of guilty.  *State v. Peters*, 546 So.2d 829 (La. App. 1st Cir. 1989), *cert. denied*, 552 So.2d 378 (La. 1989).  Similarly, under federal law, the law relating to guilty pleas applies to pleas of nolo contendere.  *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000) (citing *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990)).  The Court will consider the Supreme Court standards addressing guilty pleas to assess Hawthorne's claim.  In doing so, the validity of a plea is a question of law, although historical facts are entitled to a presumption of correctness.  *See Parke v. Raley*, 506 U.S. 20, 35 (1992) (citing *Marshall v. Lonberger*, 459 U.S.

422, 431 (1983)); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1988). The Court must therefore determine if denial of relief was contrary to, or an unreasonable application of, federal law.

Hawthorne first contends that the state trial court erred in accepting his plea before addressing his motion to appoint a sanity commission and resolving his mental competence. The record, however, is clear that neither Hawthorne nor his counsel filed a motion for appointment of a sanity commission. Thus, there was no such pending motion for the trial court to rule on, or fail to rule on, when Hawthorne entered his plea. Hawthorne's arguments in that regard are factually baseless.

The record instead reflects that, on March 6, 2007, Hawthorne's appointed "death penalty" counsel filed a perfunctory pleading entitled, "Louisiana Code of Criminal Procedure Article 726 Notice," at the same time the initial discovery motions were lodged.[26] This pre-discovery notice declared only the defense's intent to introduce testimony related to mental disease, defect, or other condition bearing on Hawthorne's mental state <u>at the time of the murder</u>, including drug and alcohol abuse or mental instability induced by drug or alcohol consumption. The record does not appear to contain evidence or suggestion that Hawthorne was intoxicated or under the influence of drugs at the time of the murder or that there was any other question about his mental capacity at the time of the murder. That, nevertheless, is <u>not</u> the question presented here where Hawthorne's claim instead relates to his mental capacity at the time of the entry of the no contest plea.

---

[26]St. Rec. Vol. 1 of 4, La. Code Crim. P. art. 726 Notice, 3/6/07.

Thus, even if this notice suggests that substance abuse could have affected Hawthorne's specific intent to kill or commit great bodily harm at the time of the murder, it does not address or in any way call into question his capacity to enter the no contest plea three years later. The Constitution prohibits the trial and conviction of a criminal defendant who is mentally incompetent to assist with his defense. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975); *Pate*, 383 U.S. at 378; *Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997). The competency standard for pleading guilty considers whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). If there is any doubt as to the defendant's mental state during the guilty plea hearing, the trial court must conduct an inquiry as to competence. *Pate*, 383 U.S. at 385.

As a threshold matter, a petitioner like Hawthorne in a habeas proceeding who claims that he was incompetent at the time of his plea must first present "meaningful evidence" of mental incompetency. *See Demosthenes v. Baal*, 495 U.S. 731, 736 (1990) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 166 (1990)). He must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his mental competency at the time of the plea. *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998) (quoting *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir. 1996)); *Goynes v. Dretke*, 139 Fed. App'x 616, 619 (5th Cir. 2005).

In determining whether there is sufficient evidence to have required a court to evaluate mental competence, the United States Fifth Circuit has focused on three factors: (1) the existence of a history of irrational behavior; (2) the petitioner's demeanor during the court proceedings; and

20

(3) prior medical opinions regarding his competence. *Matthis v. Dretke*, 124 F. App'x 865, 875 (5th Cir. 2005); *United States v. Williams*, 819 F.2d 605, 608 (5th Cir. 1987); *see also*, *Drope v. Missouri*, 420 U.S. 162, 174-75 (1975) (the test on collateral review is "whether, in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial."). Brief and conclusory allegations that counsel's representation was deficient because of a failure to investigate and develop useful evidence of mental incompetence will not suffice. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

To that end, there is nothing in the record and Hawthorne has presented nothing to suggest that his competence at the time of the plea was in question or that it should have been questioned by the state trial court or his counsel during the hearing. Instead, Hawthorne's persistent and comprehensive *pro se* motions and his arguments to the state trial court stand as evidence of his understanding of the proceedings and his awareness of the consequences of the charges he faced. The transcript of the plea also does not reflect any basis for the court to have questioned Hawthorne's understanding or ability to enter the plea. Without something more than his conclusory conjecture, Hawthorne has failed to establish a basis to have questioned his competence at any time during the proceedings much less at the plea hearing.

Furthermore, the plea colloquy also was sufficient to support acceptance of the plea as knowing and voluntary. "A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

Thus, a prisoner generally may not "collaterally attack a voluntary and intelligent" plea. *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Amaya*, 111 F.3d at 389. Therefore, "[i]f a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A plea qualifies as intelligently given when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" *Hernandez*, 234 F.3d at 255 (quoting *Boykin*, 395 U.S. at 244). Louisiana law follows these same directives in its statutory requirements under the provisions of La. Code Crim. P. art. 556.1 regarding guilty and nolo contendere pleas to a felony.[27] Thus, Hawthorne's plea is valid if he understood the nature of the constitutional protections being

---

[27]For example, La. Code Crim. P. art. 556.1(A) provides in relevant part as follows:

A.   In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

(1)   The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. [. . .]

(3)   That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

(4)   That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

waived and the charges against him.  *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

The record reflects that Hawthorne understood the proceedings, the waivers he made, and

the confession of no contest to the charge.  Hawthorne advised the Court in his own words that he

wanted to enter the plea to the charge:[28]

> THE COURT:  [. . .] With that, Mr. Hawthorne, what is your pleasure as it relates to
> this plea agreement, sir?
>
> MR. HOLLINGSWORTH:  I would advise my client to enter his own best plea of
> guilty to the charge.
>
> THE COURT: Well, you can just tell me in your own words.  I will put you in under
> oath and go through more than this.
>
> THE DEFENDANT:  Yes, sir, I wish to plead to the charge.
>
> THE COURT: All right.  You wish to enter a no contest plea and accept the plea
> agreement?
>
> THE DEFENDANT:  Yes, sir.

The Trial Court then placed Hawthorne under oath and confirmed matters such as his name,

age, and education.[29]  The Court advised Hawthorne that he was charged with first degree murder,

reading to him the entire statutory definition of that crime under La. Rev. Stat. § 14:30 which

provides several conditions under which the crime can be charged.  The Court painstakingly

excluded the particular factors that did not apply in Hawthorne's case and resolved and clarified the

prongs under which he was being charged with murder identified as having occurred during the

commission of an aggravated burglary, an armed robbery, and/or where the victim was over the age

---

[28]St. Rec. Vol. 1 of 4, Plea Transcript, p. 8, 4/22/09.

[29]*Id.*, p. 9.

of 65.[30]  The Court also advised Hawthorne that, because the death penalty was being waived by the State, he was facing life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[31]  The Court asked Hawthorne if he understood the charges and the possible penalties if he entered the plea, and Hawthorne twice responded, "Yes, sir."[32]

The Trial Court further reviewed Hawthorne's right to plead not guilty and to proceed to jury trial, his right to confront and cross-examine his accusers, his right to remain silent, his right to compulsory process, and his right to appeal the conviction, other than the right reserved under *Crosby*.[33]  The Court explained that each of these rights was being waived by the entry of the plea.[34]  To all of this, Hawthorne expressed his understanding and reconfirmed his desire to enter the plea of no contest and to waive these enumerated rights.[35]  The Trial Court specifically asked him why he wanted to enter the plea, and Hawthorne responded, "Because it's in my best interest at this moment."[36]  Hawthorne also acknowledged that he was not coerced or promised leniency.[37]

The Court also confirmed on the record that counsel had reviewed these same considerations, i.e. the nature of the charges and his legal and constitutional rights, with Hawthorne and that counsel

---

[30]*Id.*, p. 10.

[31]*Id.*, pp. 11, 13

[32]*Id.*, p. 11.

[33]*Id.*, pp. 11-12.

[34]*Id.*, pp. 12, 13.

[35]*Id.*, p. 12.

[36]*Id.*

[37]*Id.*, p. 13.

believed that Hawthorne understood each of his rights and waivers.[38]  Hawthorne acknowledged his satisfaction with his legal representation.[39]  In addition, the State and defense counsel agreed to submit the entire record of the proceedings as the factual basis for the plea.[40]

Contrary to Hawthorne's arguments, the record is eminently clear that the constitutional requirements for a knowing and voluntary plea were fully met.  Hawthorne knew he was pleading nolo contendere or no contest to first degree murder having been committed during an armed robbery and/or aggravated burglary and/or where the victim was over 65 years old and that he would receive a life sentence at hard labor without benefit of parole, probation, or suspension of sentence. He acknowledged before the Trial Court all of the elements of his plea agreement, the consequences of his plea, and the waiver of his constitutional rights.

For the foregoing reasons, Hawthorne has failed to establish any basis for the state courts' to have questioned his mental competence to enter the plea, and the record reflects that the plea was knowingly and voluntarily entered with full protections required under Supreme Court precedent. The denial of relief by the state courts was not contrary to, or an unreasonable application of, federal law.  He is not entitled to relief on this issue.

## IX.   Effective Assistance of Counsel

Hawthorne alleges that his counsel provided ineffective assistance by forcing him to enter the plea while his competency was still in question.  He contends that counsel did not adequately address his mental competence before advising him to enter the plea.  He also claims that counsel

---

[38]*Id.*, p. 13.

[39]*Id.*, p. 15.

[40]*Id.*, pp. 13-14.

erred in allowing him to enter the plea when there remained a question about the identity of the perpetrator. In that regard, Hawthorne contends that the State had only his unlawful confession made to Patrick in the jail and a statement from an unidentified eyewitness who gave a general description of a white or light-skinned man he saw leaving the victim's home. Hawthorne suggests that he is not light-skinned and could not be mistaken for a white man, leaving doubt as to the identification made by that witness.

Hawthorne raised these arguments on state post-conviction review, which was denied at each level of the state courts. The State did not address the merits of the issue in its response.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court precedent.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty, which has the same effects Hawthorne's plea of nolo contendere. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya*, 226 F.3d at 408; *Jernigan*, 980 F.2d at 296. In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

Applying *Strickland* under *Hill* in the context of a plea, the first prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support

27

federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, 131 S. Ct. at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

In the instant case, Hawthorne does not contend that trial counsel's alleged errors were a substantial reason for his entry of the no contest plea or that, but for counsel's alleged errors, there was a high probability that he would not have entered the guilty plea. Instead, his arguments relate to the adequacy of his counsel's performance in failing to challenge his competence, to assure his identification as the murderer, and under a broad reading, to complete the challenge to the propriety

of his inculpatory statements before advising him to enter the plea.  Thus, even when construed broadly, Hawthorne's petition does not contend that there is a substantial probability that he would not have entered a guilty plea, and would have insisted on proceeding to trial and facing the death penalty, if his attorney had not committed the alleged errors.  Without this showing, this court cannot find that he was prejudiced by his counsel's performance under the standards set for the in *Hill* and *Strickland*.

Furthermore, Hawthorne has failed to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case.  As discussed previously, the record is devoid of any basis for counsel to have questioned Hawthorne's mental competence to assist in his defense or enter the plea.  As evidenced by Hawthorne's litigious pursuits on his own behalf, he demonstrated a clear understanding of the proceedings and competently discussed numerous pretrial issues directly with the state trial court.  Having failed to demonstrate a basis to have questioned his competence, there is no showing of deficient performance by counsel.

In addition, counsel's advice to accept and enter the plea under the provisions of *State v. Crosby* assured Hawthorne the right to appeal the denial of the motion to suppress his statements to inmate Patrick.  At the outset, Hawthorne has not established that Patrick's reporting in any way amounted to a violation by the State of his rights to counsel or to remain silent.  Thus, at the time counsel advised him regarding the plea, the State had compelling evidence of Hawthorne's identity and guilt.  Hawthorne through his inculpatory statement identified himself as the murderer by demonstrating his knowledge of facts about the murder that were not disclosed to the public and which could have only been known to the perpetrator.  Counsel indicated at the plea hearing that he discussed with Hawthorne the fact that the prosecutor did not have to offer him the plea and that the

plea offer could be withdrawn at any time if not accepted.  Hawthorne accepted the plea agreement recognizing it to be in his best interest rather than face the death penalty.  Based on the circumstances, it was reasonable for counsel to advise Hawthorne to accept the plea while reserving his right to appeal the suppression issue under *Crosby*.

The Court also notes that the Louisiana First Circuit's procedural rejection of the pre-plea writ applications filed by counsel does not demonstrate prejudice.  As mentioned previously, counsel filed two writ applications challenging the Trial Court's denial of the motions to suppress.  The first writ application was not considered by the appellate court for counsel's failure to provide the required documentation in support.  The second writ application was not considered by the appellate court, because the first writ was not timely filed by counsel to preserve review.  Nevertheless, on direct appeal filed under *Crosby*, the Louisiana First Circuit thoroughly reviewed Hawthorne's arguments and found no merit in the challenge to the denial of the motions to suppress and no impropriety regarding the inculpatory statements made to Patrick.  There is no reason to assume that the circuit court would have ruled differently on the merits of the earlier writ applications had they been considered.  Thus, Hawthorne can show no prejudice resulting from counsel's failure to file procedurally proper writ applications before advising him to enter the *Crosby* plea.

Furthermore, as determined in the prior section of this Report, the record demonstrates the constitutional propriety of Hawthorne's plea as determined by his demonstrated understanding of at the plea hearing itself.  He made no statements at the plea hearing that were inconsistent with guilt or that should have caused the state court concern about the voluntariness of his plea.  The record presents no support for his claim that his counsel was ineffective or that any error on the part of his counsel acted as the "but for" reason for his entry of the no contest plea.

For these reasons, the state courts' denial of relief was not contrary to, or an unreasonable application of, *Strickland* or *Hill*. Hawthorne is not entitled to relief on this claim.

## X.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Hawthorne's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 5th day of November, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[41]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.